20-3582 from the Northern District of Iowa, the Estate of Willys H. Fritz et al. v. Bryson Henninger et al. Alright, Mr. Doar? Yes, Judge. You ready for my argument? Yes, thank you. My name is Fred Doar and I represent the Estate of Willys Fritz and his family. Mr. Fritz died in an automobile accident in a small Iowa town of West Union in July of 2017. The cause of death involved a West Des Moines police officer who was responding to a call for service who essentially broadsided my client as he attempted to cross Highway 150. It's important in this case because the judge ruled against us on summary judgment found that no reasonable jury could find as a matter of law that there was any reckless behavior on the part of the police officer. And we take strong exception to that because we had seven eyewitnesses that watched this event unfold, all of whom indicated otherwise. I'm going to go through those individually because it's important, I think, for the court's understanding of why we resist the judgment entry against us based on the fact that a court can take away from a jury fact issues such as the ones we have here. Again, this record is replete with genuine issues of material fact that should have been resolved by the jury, not a trial judge. We start with a situation where my client, the decedent actually, lived in this small town. He was on his way to pick up some paint at a hardware store. He crossed this Highway 150, which is close to his home. He's on his way back. He stops at a stop sign before entering Highway 150. There are two cars that pass past him. There's another vehicle that passes on the opposite lane of travel going the other direction. So he's situated at this stop sign waiting to get onto Highway 150. Now what is the young police officer, Bryson Henniger, what is he doing? He's working the day shift that day in West Union. He happens to be headed to his house and ultimately when he gets this call for service, which call for service incidentally came in on a business line, not 911, he's sitting in the driveway of his home, ready to go into his house for his 15 or 20 minute break. He gets this call and it's actually from an apartment manager of an apartment on the edge of town saying that there's a fight. Now his position and defense counsel's position is that that meant that he had to go into emergency response mode. When you look at the facts of this case though, this officer had been out to that scene before. You know there was a woman who lived there who was a constant complainer about her neighbors. Counsel, this is Judge Smith. The question of recklessness, as I understand your argument, you're saying the question of recklessness begins with the decision to conclude to operate the vehicle in emergency mode. Why doesn't the recklessness question, because it's involving the operation of the car itself, begin with whether the car was being operated appropriately in emergency mode as opposed to the rationale for entering that mode to begin with? I think it does begin with how the car was operated. But I also think because part of the foreseeability issue, which the judge said he could determine as a matter of law, part of the foreseeability and recklessness issue relates to the state of mind of the operator. And the state of the mind of the operator I think is important to understand why it is that this emergency mode response was necessary. That was also an affirmative defense that was raised by the defense in this situation. This was an emergency response under the law. It's what did the officer understand to be the emergency that he was responding to. So I think it's a combination of both of those issues that are fact issues. As soon as he finds out that this is a call for service to a place he's been before, he doesn't ask what kind of a fight it is. He doesn't ask for details. Instead, he backs out of the driveway. In short order, he's on Highway 150 headed toward a four-way stop in this town where Highway 150 and Highway 18 intersect. It's a four-way stop. He is now traveling northbound on 150 with lights and sirens activated. There's eyewitness testimony. The first eyewitness that saw him react is a fellow who is older. He was infirmed. He was basically housebound. He would look out his window on Highway 150 traffic. He'd seen many response vehicles, police vehicles go by his home before. He said he'd never seen one operated this fast. The next person that gave eyewitness testimony was standing in a hearty restaurant right alongside this Highway 150. He looks out and watches this police officer drive an oncoming vehicle off into the grass. His testimony is he would have crashed into this individual but for the individual going off the road into the grass. The officer says that he was straddling the middle line as he was proceeding. He had one vehicle ahead of him which went off to the side. He had a second vehicle in front of him which was a pickup with a large box on the back end of it which had the potential at least to create some sightline problems. He approaches the intersection. He gave testimony that he slowed down going into the intersection. The black box we refer to it as in the police vehicle shows that he didn't slow down. He had the accelerator floored, full throttle, no braking, constantly increasing RPMs. He went through the intersection at about 45 miles an hour. Two police officers, fellow police officers of his said in deposition testimony we would have not done that sort of thing. We wouldn't have operated that way. The fellow that saw him at Hardee's when asked how would you characterize that officer's driving that day, operation of that vehicle, he used the word reckless. So he gets to the intersection. He goes through the intersection. At that point there are multiple other witnesses that see what's going on. The district court judge tended to focus only on what happened after clearing the four-way stop. In your opposition to the, counsel this is Judge Smith again, in your opposition to the summary judgment motion, was that clearly presented or where in your opposition do you point out to the district court that this was not an emergency call? We had a police practices expert witness. That police practices expert witness indicated as much. He said this was not an emergency call at that point based on when they ultimately got to this scene, actually it was the second officer that had to go to the scene when the first officer got involved in this accident. Second officer viewed it as, didn't even necessitate a written report. It was just a domestic situation as far as he was concerned. The police practices officer pointed out it was a two-minute response time had he driven at observing all traffic laws for the state from the time he initiated the call to the time of the response. He could have made it to that site in two minutes. Instead, what he elected to do was drive up to 60 miles an hour at the time he hit my client. That police practices experts testimony was part of the record and pointed out to the court. What was the rationale or what was the consequence of dropping your negligence claim after the removal to federal court? I think you have to establish recklessness under the Iowa law in terms of being able to determine that a police officer is responsible for his behavior. That's why it's particularly important when you look at the remaining roughly four seconds from the time this officer went through the four-way stop until he collided into my client. Then you have two eyewitnesses who are standing close by. They observed this. They had just walked out of a grocery store in the area. They both turned to each other and said, he's going too fast. He's going to hurt somebody. There was a pedestrian, a grandmother, who was walking down the street toward this collision scene with her granddaughter. She looked up. She saw this unfolding after the intersection. She said, he's going to hurt somebody. He better slow down. He's going to kill somebody. That's what she was thinking. Most important is the owner of the BP gas station, whose gas station was right next to where this collision ultimately occurred. This incident was a fellow that back when he was younger used to race cars on a little track they had in that town. He knows cars. He was outside painting around his pumps. He looked up when he heard this car coming, going through the intersection. He said, it jumped the intersection. He said, the wheels didn't go off the ground, but the suspension lifted. He said, you could hear the air cleaner sucking. It was moaning the way he phrased it, trying to suck air because this car was going so fast. He then commented to himself out loud, someone's going to fucking die. That was his response to this. You have all of this going on. The question is, is this reckless or not? You have seven eyewitnesses in various shapes or forms both before the intersection and after saying, this was reckless behavior on behalf of this officer when he had no reason to be operating this way. He could have been there in two minutes. This was not the kind of thing that called for him to do what he did. The judge says, well, the trial court said, well, the sirens were on. And that's incidentally what the officer said. He claims the siren was on all the way to the collision site. Nobody else supports that. Two or three witnesses say, no, he turned it off at the intersection. But the lights were indisputably on, right? I mean, there's nobody that disputes the lights were on. That's correct. The lights were on. It was afternoon, it was a clear day. But there is the overwhelming evidence, virtually all of the evidence, except for the police officer indicate the sirens were off. They didn't hear the sirens. So the judge puts a lot of emphasis at trial level. Well, if nothing else, he should have heard the siren. Why? Isn't it undisputed that the siren was on at least up to 200 feet before the collision? 300 feet, Judge. Roughly a football field. Roughly a football field ahead of that. But the question is, when the siren goes off, most people are going to assume the officer, whoever it is that's responding, is where he's going to stop when the siren goes off. That's what most people would assume. So even if he did hear the siren, there's no evidence he did because he was killed. This officer didn't know if my guy, he says he saw him at the stop sign up ahead. I mean, you're learning driver's ed as a basic premise. If you're in a traffic area, heavily trafficked, this is the most busy intersection in the town. If you're traveling in that area and you see people ahead of you, do regard calls for some moderation. There are cars passing between them. So there are these sightline obstruction issues. Their expert says, well, they had at a minimum three seconds of unobstructed sightline vision. So the judge also pointed out when my guy started off from the stop sign to cross Highway 150, the police officer hadn't cleared the four-way stop yet. My guy, according to the trial judge, would have had a clear view of passage across the highway, which is where he intended to go at that point. A lot of this, though, I think was also present in the Bell case, the 1998 Iowa Supreme Court. You had an ambulance. You had some cars going off to the side. The highway looked clear. The street looked clear. How do you distinguish this case from the Bell case? Because in Bell, the plaintiff lost on both parts of the recklessness analysis. I think we have a much stronger fact base in this case than they did at Bell. There are no witnesses that indicate or suggest that this was reasonable behavior on behalf of the officer. All the witnesses say, no, this man was driving in a reckless fashion which had high probability of hurting or killing someone. Do the witnesses' legal conclusions really make much difference? You can take the legal conclusion aside. Their perception of the way this officer was operating was high risk. They can say he was driving fast. He was swerving. He was driving people off the road. The police officer recognized that the person was ahead of him. Jim Moss, the owner of the BP station, can say, I saw this car jump the intersection. I heard the moaning. The black box showed there was nothing but speed until two seconds before this collision occurred. It shows no braking until two seconds before the collision occurred. There were cars that were obstructing the vision. So you take all of that evidence and that creates a situation where due regard calls for moderating your behavior. And he didn't do it. And he admits he was at maximum 35 to 40 seconds away from the call site. So your argument is that this is a stronger, there's stronger evidence in this case. There's a few facts here, stronger eyewitness evidence than we had in the Bell case. Absolutely. There are several. I mean, all of the eyewitnesses support our position. There are no eyewitnesses to the contrary. Mr. Doerr, you have about a minute and a half left. Would you like to reserve or continue? I would like to reserve, Judge. Thank you. Sure. You're welcome. Mr. Claussen. Thank you, Your Honor, and may it please the court, counsel, good morning. My name is Zach Claussen, and I represent the City of West Union and former police officer Bryson Henninger in this lawsuit. As the court is aware, this case involves a motor vehicle accident where former West Union police officer Bryson Henninger was operating in emergency response mode, responding to a call of a fight in progress at the Westwood Apartments in West Union, Iowa. As Officer Henninger proceeded northbound on Highway 150, he cleared the intersection and was traveling in an unobstructed lane of northbound travel when all of a sudden and unexpectedly he was stopped in front of Officer Henninger tragically. Mr. Claussen, this is Judge Smith. What does the record tell us about the reason for terminating the siren before entering the intersection? Your Honor, there is a fact dispute about whether the siren was actually turned off. Officer Henninger is adamant that the siren was not turned off at the intersection, although admittedly there were witnesses who did state that the siren was turned off at the time that he approached the intersection. However, the important point about that is whether... Counsel, wouldn't that be a meaningful fact for determining whether or not the conduct of going through the intersection at a relatively high speed, considering it's a stop as opposed to some other way of traversing an intersection and an awareness of the presence of others? Wouldn't that be something that perhaps a juror should be able to take into account? There's a few points on that, Your Honor. The first is that just because the siren may have been turned off does not foreclose the officer from being entitled to the immunities in Iowa Code Section 321.231. But getting to your exact question about the siren being turned off itself, the district court relied on this fairly extensively in the analysis and said regardless of whether the siren was turned off, the issue is whether or not the officer knew or should have known whether Mr. Fritz was either unlikely to yield to him or whether Mr. Fritz was likely to be unaware of his approach. The testimony from various witnesses in the area of the intersection indicate that multiple people heard the sirens, and that was about an accident that took place some 300 feet or 272 feet away from the intersection itself where he had the siren on. So there's nothing tending to indicate to the officer that by turning his siren off, even assuming that he did, that this gentleman, Mr. Fritz, would be unable to hear the siren. The record evidence shows that there were two kids in the parking lot, one inside of his vehicle, coming down the highway. There's evidence of a gentleman inside of a Hardee's food chain who actually heard the siren. There's also a gentleman inside of his home that Mr. Doar touched on who actually heard the siren. So based on the fact that these other vehicles and pedestrians were aware of the siren and heard the siren leading up to the intersection, there is nothing giving this officer any indication that this vehicle would be able to hear the siren. I want to touch on a question that... Mr. Klassen, in that regard, how do you respond to Mr. Doar's argument that the turning off of the siren would have indicated potentially to Mr. Fritz that the emergency situation was complete? Your Honor, he still had his lights on. Just because the siren is turned off does not mean that Mr. Fritz is relieved of his duty to look for traffic at the intersection. What the section dealing with emergency response says is that whether it's lights or siren, the driver has a duty to yield to emergency vehicles in that particular situation. Getting back to the issue of recklessness, I want to touch on something that Judge Smith asked Mr. Doar. In this case, the plaintiffs filed a cause of action and went to trial. Because of that and because of not challenging the standard of recklessness at either the district court level or on this appeal, they have acknowledged that recklessness is the standard that they must prove to recover in this case. Even that Mr. Henninger was responding to an emergency call as is indicated in that particular code section. No matter how much Mr. Doar was involved in that day, the nature of the emergency was that he received a call of a fight in progress from an apartment complex that was a known problem area for this city. He had been there one month. Counselor, is the question of whether an emergency was underway or emergency justified the officer's driving speed, is that a question, a fact for the trier I think it can be resolved as a matter of law and I think that that issue is foreclosed by the plaintiffs not raising that issue at the district court. As I was just mentioning, the fact that they filed this claim under the recklessness statute and abandoned their claim of negligence concedes the fact that this was an emergency call that officer Henninger was responding to on the date of this incident. From a location that is a problem area for the city, this particular officer had been there one month prior where he dealt with these exact same individuals who were the subject of this call. At that visit, there was an arrest for public intoxication, there was a threat that was made by the son against his mother for assault, and there was actually a picnic table that was flipped on the son's expecting girlfriend. For those reasons, this is the recklessness standard that the plaintiffs must prove because they pled that at the trial court. Getting to the actual standard for recklessness, the Iowa Supreme Court has acknowledged that this is an extremely high bar for a party to have to meet in order to prove recklessness. The reason for this, as noted in the case law, is that officers must make in responding to emergency calls and in driving in emergency response mode. Counsel, can I ask you, what do you think is the most analogous case that is finding on us? An Iowa case, or perhaps even an Iowa Court of Appeals case even though it wouldn't be finding on us? Yes, Your Honor. The most analogous case, as you indicated to Mr. Doar, is the Bell v. Community Ambulance Service case. In that case, the driver is operating in emergency response mode. He has a clear lane through the intersection. The driver didn't know that the woman who ended up pulling out in the intersection was going to do so or was going to fail to yield to him. And he had no knowledge that this driver was going to create a dangerous situation. Those facts are the same that we have here. I mean, Officer Henniger is unobstructed. There's no dispute that there were cars in the intersection when he traveled through it. As he's traveling through the intersection, he has a northbound lane of travel where it's unobstructed. There's no dispute that there's any cars in front of him. He's traveling down an unobstructed path in the roadway, and it's reasonable for him to believe in that situation that Mr. Fritz would not pull out in front of him in accordance with the statute providing that drivers have a duty to yield to emergency response vehicles. Did Bell involve a high rate of speed? The reason why I ask is because obviously I don't think Bell would govern if somebody was driving 120 miles per hour down a residential neighborhood or something and went to an intersection. So I'm trying to figure out the chief asked about the high rate of speed. I'm trying to figure out how that factors into the Bell analysis. Yes, your honor. I believe in Bell, the ambulance driver was traveling around 45 miles an hour. Don't quote me on that. I'd have to look at the opinion to get that exactly. But the cases that do involve a high rate of the speed under Iowa law are those cases dealing with recklessness under the prior guest statute in the state of Iowa. I'm not disputing the fact that Henniger was driving 60 miles an hour. But those prior cases indicate that speed does not operate in a vacuum. It's the attendant circumstances coupled with the speed that can give rise to a claim of recklessness under Iowa law. Those prior cases dealing with the guest statute that concern recklessness, we're talking about cases where drivers are traveling at 125 miles an hour through four sets of curves, where drivers are swerving back and forth on gravel roads while laughing at the passengers who are asking them to slow down. Here, we have a case where the officer is traveling 60 miles an hour at most. He slows down, actually, at the time in attempts to avoid the collision once he realizes that Mr. Fritz is going to pull out in front of him. The attendant circumstances are the fact that he's responding to an emergency call. He clears an intersection that has no traffic in it, and he's traveling northbound in an unobstructed lane. Mr. Carlson, I watched the video yesterday, and as I saw it, there were two cars that passed in the opposite direction shortly before the collision. Could those have affected the sight line? Is it conceivable that they would have prevented Mr. Fritz from seeing the officer approach? Yes, Your Honor. I think what the record shows, and this is acknowledged by the district court, is that both parties' experts agree that there might have been a momentary sight line obstruction. But at least, in terms of three seconds before the collision occurred, that sight line obstruction was gone. That sight line obstruction cannot give rise to a claim of negligence. Even if Officer Henniger was negligent, this is not negligent for not observing Mr. Fritz during that momentary lapse. This is not a negligence case. This is a high burden where they have to prove that it was highly probable and highly likely that this collision would occur. As the district court focused on, the material issue to know that Fritz was not going to yield to his vehicle and was going to pull out in front of him. As the video shows, Mr. Fritz stood at the stop sign for roughly 15 seconds. He pulls out directly in front of Officer Henniger's path. There was nothing giving the officer reason to know that this gentleman would not yield to his vehicle for negligence with Iowa law. The other thing I want to touch on here is that this is not a case where there are aggravating circumstances such as intoxication, such as cell phone use, such as the officer being drunk or on drugs or even being distracted by a computer in his cruiser. This is a case where the facts show that the officer was attentive to his driving once he realized that Mr. Fritz was going to pull out in front of him. He tried to avoid the collision but unfortunately was unable to do so. I want to touch briefly before my time runs out on the 1983 claim that has been pled in this case. It's our position that the 1983 claim was not briefed in counsel's opening brief on appeal. The entire focus of that brief was on the issue of recklessness and for that reason the second point there is that even if counsel did not waive this argument in their opening brief because Officer Henniger's conduct was not reckless there can be no 1983 claim as the district court found. But even if this court finds a fact dispute and that there is an issue of fact for the jury to decide on the issue of recklessness in the 1983 claim under the cases of Terrell v. Larson which is this court's case because of the rapidly evolving police situation the plaintiffs have to prove the intent to harm standard that Henniger's conduct was so egregious that he essentially intended to harm Mr. Fritz. None of those facts are present in this case. Even if the intent to harm standard doesn't apply to the part of the city who this claim was pled against and there's actually evidence in the record from the plaintiff's own expert indicating that the officer was trained in accordance with the laws. For that reason even if the court overturns this case on the issue of recklessness there's no basis to overturn the 1983 claim. I see that my time is about to expire. In closing I just want to again quote this case of Morris v. Leaf which states that assuring police protection from the chilling effect of liability for split-second decisions is an important policy justification and the reason why this recklessness statute has been adopted. The facts in this case and the officer's conduct do not reach that conclusion. Thank you Mr. Klausen. Mr. Dewey, your rebuttal. Thank you Judge. The reason there was a split only seconds to make a determination whether or not he could respond in time was based on the officer's reaction to this. He created a situation where he gave himself no margin of error. So now to rely on that as an excuse for hey I didn't have time to think this thing through when he created those circumstances I find disingenuous. This officer was known within the department one of his fellow officers testified that he was known as young, aggressive, willing to tear things up. In his application for employment he said he identified self-identified as a thrill seeker. The department knew this. This business about 1983 actions and training wasn't proved this that whatever else. The trial court didn't dismiss the 1983 action on anything other than there was recklessness in his judgment not apparent so that also removed the 1983 action and the circumstances gave this officer little time to respond which we've also addressed. In the summary of the argument I did address both the 1983 action but I said that since recklessness was intertwined with both recklessness whether it existed or not was significant to this case. I'd like to specifically respond to Mr. Clausen's statement that Fritz had the responsibility to look for traffic. The trial court said he did look out. He looked across the road and at that point the police officer hadn't even cleared the intersection yet. He looked across the road and he had a clear line of travel to traverse across the 150 highway. How could he expect and the officer also admitted when I asked him in his deposition would most people who live in that area assume that everybody is going to stop at that four-way stop? He said yes. Then my response is would most people assume that from a stop three seconds later a car is going to be going 60 miles an hour with the siren off approaching in that fashion? No, it's not reasonable to think that. You can pick apart all these different issues about what people saw what people said what the officer did or didn't know. He saw this man ahead of him stop. He knew there were sideline obstructions. He knew how fast he was going. He didn't know whether or not the individual ahead of him Mr. Fritz even saw him. When I asked the police officer what was your understanding as to whether or not this officer this my client saw you? He said I can't speak to what he did or didn't see. That's a signal to any officer if you don't know what a person had who you can see can see you or not you have to take that into account in terms of their behavior. The other interesting thing is this officer Counselor, your time has expired. Alright, thank you. I appreciate the opportunity to make the presentation. Alright. The court appreciates both counsel's presence before the court this morning and the argument that you've made to us and the briefing which you've submitted previously in the case. We'll continue to study it and render decision in due course. Thank you.